**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

NATURAL GROCERS BY VITAMIN
COTTAGE, INC., a Delaware corporation, and
VITAMIN COTTAGE NATURAL FOOD
MARKETS, INC., a Colorado corporation

Plaintiff,

v.

AMCO INSURANCE COMPANY,
an Iowa insurance company,

Defendant.

---

## COMPLAINT

Plaintiffs, Natural Grocers by Vitamin Cottage, Inc. and Vitamin Cottage Natural Food

Markets, Inc. (collectively, "Natural Grocers") for their Complaint against Defendant AMCO

Insurance Company allege as follows:

### PARTIES

1.      Natural Grocers by Vitamin Cottage, Inc. ("NGVC") is a publicly traded

company organized under the laws of Delaware.  Its headquarters and principal place of business

are located in Lakewood, Colorado.

2.      Vitamin Cottage Natural Food Markets, Inc. ("Vitamin Cottage") is a privately

held corporation organized under the laws of Colorado and a wholly-owned subsidiary of

NGVC.  Vitamin Cottage's headquarters and principal place of business are located in

Lakewood, Colorado.

3.      The AMCO Insurance Company is licensed by the Colorado Division of Insurance to write commercial general liability insurance in the State of Colorado.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1).  Both NGVC and Vitamin Cottage are citizens of the State of Colorado with a principal place of business located in Lakewood, Colorado.  AMCO is a citizen of the State of Iowa.  The amount in controversy in this action exceeds $75,000.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).  A substantial part of the events giving rise to the claims in this action occurred in the State of Colorado.

## GENERAL ALLEGATIONS

**The Underlying Action**

6.      NVGC owns Vitamin Cottage, a specialty retailer of natural and organic groceries and dietary supplements.  Currently, Vitamin Cottage operates 115 stores in 19 states, including 36 in the State of Colorado.

7.      On September 25, 2015, Bernhard Engl ("Engl") filed a putative class action complaint against Natural Grocers identifying as putative class members himself and similarly-situated individuals who shopped at Natural Grocers between December 2014 and March 2015 using credit or debit cards to pay for their purchases (the "Underlying Action").

8.      On December 30, 2015, Engl filed a First Amended Class Action Complaint (the "Operative Complaint").

9.      The Operative Complaint contains various allegations involving negligence on the part of Natural Grocers, which negligence allegedly resulted in a data security breach (the "Security Breach").

10.     The Operative Complaint alleges that third parties accessed customers' credit and debit card information and personal and financial data stored in Natural Grocers' electronic database.

11.     The Operative Complaint further alleges that the Security Breach occurred starting in December 2014.

12.     The Operative Complaint's allegations assert, *inter alia*, that:

a.      Natural Grocers "fail[ed] to secure and safeguard its customers' personal and financial data, including credit and debit card information;"

b.      Class members' "personal and financial information was stolen by criminals in the course of their attack on [Natural Grocers'] inadequately secured electronic system;"

c.      Named plaintiff's "credit card was cancelled as a result of [Natural Grocers'] failure to protect his personal and financial information;"

d.      Named plaintiff's "credit card was declined when he attempted to use it" to make purchases;

e.      Natural Grocers' "fail[ed] to comply with reasonable security standards . . . to the severe detriment of [Natural Grocers'] own customers—including Class members []—who have been subject to the Security Breach or otherwise have had their financial information placed at serious and ongoing risk;"

f.      Natural Grocers failed to "meet[] the standards of commercially reasonable steps that should be taken to protect customers' personal and financial information;"

g.      Natural Grocers "failed to comply with the PCI DSS [payment card industry data security standards], resulting in the Security Breach;"

h.      Natural Grocers "fail[ed] to take reasonable measures to safeguard [class members'] personal and financial data;"

i.      Natural Grocers "fail[ed] to properly implement adequate, commercially reasonable data security practices to protect [class members']  personal and financial information;"

j.      Natural Grocers "failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring;" and

k.      "It was foreseeable that [Natural Grocers]'s willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of theft by data thieves."

13.     As set forth in the Operative Complaint, the putative class is seeking compensatory damages and other relief.

**AMCO's Insurance Policies and Denial of Coverage**

14.     In 2014, AMCO issued a "Premier Businessowners Liability Coverage Form," Policy number ACP BPR 3086553445 ("2014 Policy"), which included a General Liability coverage form, effective for the policy period March 1, 2014 – March 1,  2015.

15.     In 2015, AMCO issued a renewal of the "Premier Businessowners Liability Coverage Form," Policy number ACP BPR 3096553445 ("2015 Policy"), which included a General Liability coverage form, effective for the policy period March 1, 2015 – March 1, 2016.

16.     Natural Grocers provided a notice of claim to AMCO on September 28, 2015.

17.     Natural Grocers' notice was timely under the Policy.

18.     Both the 2014 and 2015 Policies contain the following language relevant to this action:

## I.     COVERAGES

## A.     Coverage A-Bodily Injury And Property Damage Liability

1.     Insuring Agreement

   a.     We will pay those sums up to the applicable Limit of Insurance that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

\*     \*     \*     \*     \*     \*

## B.     Coverage B - Personal and Advertising Injury Liability

**1.     Insuring Agreement**

   a.     We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

\*     \*     \*     \*     \*     \*

## V.     DEFINITIONS

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*       \*       \*       \*

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

\*       \*       \*       \*

17.    "Property damage" means:

\*       \*       \*       \*

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

19.    AMCO's policies do not define the term publication.

20.    The 2015 Policy was a renewal of the 2014 Policy; however, AMCO significantly reduced its coverage at renewal by including a specific exclusionary endorsement entitled: "EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION," which explicitly acknowledged that, with respect to "access or disclosure of confidential or personal information result[ing] in an oral or written publication that violates a person's right of privacy, this [exclusion] may result in a reduction in coverage."

21.    Colorado's Notice Statute, C.R.S.§10-4-110.5, governs an insurer's obligation to give a policyholder  notice of a reduction in coverage.

22.    If an insurer fails to give notice pursuant to the statutory requirements of C.R.S.§10-4-110.5 prior to the expiration date of the existing policy, the insurer shall be deemed to have renewed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy.

23.     AMCO responded to the notice of claim and denied any obligation to provide a defense of the Underlying Action to Natural Grocers first via email attaching a letter dated January 20, 2015, which Natural Grocers received on January 26, 2016.  A second, substantially similar denial letter came via certified mail on or about February 12, 2016, which referenced January 20, 2015 as the date on the first page, but referenced a date of February 9, 2016 in the upper right hand corner of all following pages.

24.     Natural Grocers sought reconsideration of AMCO's denial on May 6, 2016, requesting an expedited response in light of AMCO's more than four month delay in responding to the notice of claim.

25.     AMCO reconsidered its position and on June 1, 2016 sent in email to Natural Grocers standing by its prior denial of coverage.

26.     AMCO's denial of its obligation to provide a defense has resulted in Natural Grocers having to fund its own defense of the Underlying Action.

27.     In light of AMCO's actions and in order to protect itself against incurring additional significant defense costs and expenses, Natural Grocers has filed this action seeking, among other remedies, an order by the Court that AMCO has a duty to defend Natural Grocers in the Underlying Action based on the allegations in the Operative Complaint.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

28.     Natural Grocers incorporates by reference the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29.     AMCO entered into a binding written agreement with Natural Grocers to provide general liability insurance as described above.

30.     Natural Grocers fully performed its obligations under the 2014 and 2015 Policies by paying premiums in full and on a timely basis.  Natural Grocers has satisfied any conditions precedent to coverage under the Policies, including submission of timely notices.

31.     AMCO has materially breached the Insurance Policies by refusing to perform their obligations under the Insurance Policies.

32.     The refusal by AMCO to perform is not excused or justified in any manner.

33.     As a result of AMCO's breach of its Insurance Policies, Natural Grocers has been damaged and is entitled to recover damages.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

34.     Natural Grocers incorporates by reference the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35.     Pursuant to C.R.S. § 10-3-1103, no entity engaged in the insurance business in the State of Colorado may engage in any unfair or deceptive act or practice when conducting the business of insurance.

36.     AMCO may not engage in any unfair or deceptive act or practice when conducting the business of insurance in the State of Colorado.

37.     Every contract or policy of insurance contains implied covenants of good faith and fair dealing owed by the insurer to the insured.

38.     The Insurance Policies sold by AMCO to Natural Grocers contain implied covenants of good faith and fair dealing owed by AMCO to Natural Grocers.

39.     AMCO owes to Natural Grocers a duty of good faith and fair dealing in connection with Natural Grocers' request that AMCO provide it a defense in the Underlying Action as required under the Insurance Policies.

40.     Pursuant to C.R.S. § 10-3-1104(1)(h), the following acts or practices, as engaged in by AMCO in connection with the request for a defense submitted by Natural Grocers, are unfair claim settlement practices:

      a.     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

      b.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

      c.     Not attempting, in good faith, to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear;

      d.     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; and

      e.     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

41.     AMCO committed unfair and deceptive trade practices and acted in bad faith as shown in the foregoing allegations.

42.     AMCO either knew that its acts, as shown in the foregoing allegations, were unreasonable and in bad faith or recklessly disregarded the fact that its acts were unreasonable and in bad faith.

43.     AMCO's unreasonable acts and bad faith misconduct have caused damage to Natural Grocers.

**THIRD CLAIM FOR RELIEF**
**(Statutory Violations)**

44.      Natural Grocers incorporates by reference the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45.      Pursuant to C.R.S. § 10-3-1115, a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

46.      AMCO is a person engaged in the business of insurance in the State of Colorado.

47.      Natural Grocers is a first-party to the insurance contracts with AMCO and is seeking benefits provided by AMCO's Insurance Policies.

48.      AMCO may not unreasonably delay or deny payment of a claim for benefits under the Policy.

49.      AMCO's unreasonable delay and denial of Natural Grocers' claim for the provision of a defense constitutes a violation of C.R.S. § 10-3-1115.

50.      As a result of AMCO's violation, Natural Grocers has sustained damages including attorneys' fees incurred in bringing this action.  Pursuant to C.R.S. § 10-3-1116, Natural Grocers seeks recovery of attorneys' fees and up to two times the covered benefit under the Policy.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief)**

51.      Natural Grocers incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52.    The rights and duties of Natural Grocers and AMCO under the Insurance Policies are governed by the laws of the State of Colorado.

53.    There is an existing controversy between Natural Grocers, on one hand, and AMCO, on the other, concerning AMCO's duty to defend Natural Grocers in the Underlying Action under the AMCO Insurance Policies.

54.    Pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201, Natural Grocers requests that the Court declare the duties and obligations of AMCO under its Insurance Policies.  Specifically, Natural Grocers requests the Court to declare that:

    a.    AMCO is required to immediately begin providing Natural Grocers' with a defense in the Underlying Action;

    b.    AMCO is required to reimburse Natural Grocers' for the defense costs and expenses it has incurred in defending the Underlying Action from its inception through the time at which AMCO assumes the defense of the Underlying Action;

    c.    AMCO is required to indemnify Natural Grocers for any settlement or judgment in the Underlying Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Natural Grocers demands judgment against AMCO for:

1.    Actual, compensatory, and consequential damages in an amount to be proved at trial;

2.    All statutory damages available per statute, in an amount to be determined at trial;

3.    Non-economic damages in an amount to be determined at trial;

4.    Pre-judgment and post-judgment interest as allowed by law;

5.      Costs for pursuing this lawsuit, including attorneys fees, as allowed by law; and

6.      For any and all other relief the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims asserted in this action.

Dated this 2nd day of June, 2016.

Respectfully submitted,

*s/ Jose A. Ramirez*
Jose A. Ramirez
Catherine Crane
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO  80111
(303) 290-1605
email: jramirez@hollandhart.com
email: ccrane@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
NATURAL GROCERS

Address of Plaintiffs:
12612 W Alameda Pkwy
Lakewood, CO 80228

8833039_7